UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SOLOMON D. MAYE, AT AL., | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | CIVIL ACTION NO. |
| | : | 3:10-cv-194 (VLB) |
| OFFICER S. DURKIN, ET AL. | : | |
|     Defendants. | : | JANUARY 16, 2013 |

### MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [Dkt. ##69-70]

Before the Court are Defendants[1] Scott Durkin, Wayne Bullock, and Quintarus MacArthur's motion for summary judgment as well as Defendant William White's ("White") motion for summary judgment. The Plaintiff, Solomon D. Maye, ("Maye") has brought a 42 U.S.C. §1983 claim for malicious prosecution against Defendants. The Defendants argue that summary judgment is appropriate because the Plaintiff cannot show as a matter of law that there was a favorable termination of the criminal charges brought against him to establish his claim for malicious prosecution. For the foregoing reasons, the Court grants Defendants' motions for summary judgment.

### Background and Facts

This action was originally filed by Maye proceeding *pro se* on February 5, 2010 asserting claims for excessive force, sexual assault, unlawful search, denial of medical treatment, false arrest, malicious prosecution and a *Monell* claim

---

[1] The amended complaint names a New Haven Police Officer Doe as an additional defendant. To date, Officer Doe has neither been identified nor served. As Defendant Doe has not been identified or served, this Court dismisses Officer Doe as a defendant from the action pursuant to Fed. R. Civ. P. 4.

against the City of New Haven. *See* [Dkt. #1]. After the Court's Initial Review Order dismissing various claims, the Court granted Maye's motion to appoint counsel and appointed pro bono counsel. [Dkt. #28]. After motion practice by the parties including several motions to dismiss and several amended complaints filed by the Plaintiff, the sole remaining claim is Maye's malicious prosecution claim against the individual Defendants in connection with narcotics charges that resulted from Maye's arrests on May 15, 2006 and July 30, 2006, which were subsequently *nolled*. *See* [Dkt. ##17, 34. 41-45,52,54,56, 60].

The following facts are undisputed unless otherwise noted. On May 15, 2006, Maye was arrested by Officers Jose Miranda and E. Rivera on narcotics and controlled substance-related charges in addition to a motor vehicle violation, engaging an officer in pursuit, and failure to obey officer's signal. [Dkt. #69, Local Rule 56(a)(1) Statement, ¶2]. On July 30, 2006, Maye was arrested by Officers Scott Durkin, Wayne Bullock and Quintarus MacArthur and charged with several narcotics and controlled substance possession counts in addition to a motor vehicle violation. *Id.* at ¶3. Maye was incarcerated from about July 31, 2006 until January 31, 2007. *Id.* at ¶4.

Maye declares in an affidavit that he was arrested on May 15, 2006 and July 30, 2006 on false narcotics charges. [Dkt. #71, Maye Affidavit, ¶¶6]. After his May 15, 2006 arrest, Maye attests that Defendant White "pulled me from lock-up and asked me if I had information about an old homicide allegedly involving an acquaintance of mine. I told White I had no knowledge of the homicide." *Id.* at ¶7. According to Maye, White told him that if he helped to get information about the

homicide that he would ensure that Maye spent no time on jail "on the false narcotics charges" and that if he didn't help, he would see that Maye spent " a great deal of time in jail." *Id.* at ¶8.

Maye attests that on July 30, 2006, the date of the second arrest, Defendants Durkin, Bullock and McArthur pulled over his car and refused to tell him why he was stopped. *Id.* at ¶10. Maye declares that the Officers brutally assaulted him at the police station and found no drugs after a "brutal" anal cavity search. *Id.* at ¶11. Maye attests that the Officers falsely reported that he had narcotics in his car upon the order and instruction of White. *Id.* at ¶¶12-13. Maye claims that White contacted him and continued to pressure him to cooperate with the homicide investigation while Maye was in jail. *Id.* at ¶14. White told Maye he had influence with the State's Attorney's Office and "that he could see to it that the State's Attorney would make [him] a plea offer that was better than the offer that had been presented up to that point, and that included dismissal of all or some of the false narcotics charges from [his] arrests in May and July of 2006." *Id.* at ¶15.

Maye attests that he relented to White's pressure and agreed to assist White in the homicide investigation. *Id.* at ¶16. Maye declares that on January 31, 2007, he "appeared in court and entered into the agreement proposed by Defendant White." *Id.* at ¶17. The agreement provided that he serve as informant on the homicide investigation. *Id.* "As part of the agreement, [Maye] pled guilty to the false narcotics charges from May and July 2006, with a sentence of 12 years suspended after 8 years served and 5 years of probation, on the condition

that [Maye] could withdraw the pleas to the false narcotics charges once [Maye] completed [his] end of the bargain" which was to assist in the homicide investigation. *Id.* Maye claims that if he upheld his end of the bargain, "the false narcotics charges would be dismissed or sharply reduced" and that in the meantime he was "released on a promise to appear." *Id.*

In March 2007, White and other New Haven officers were arrested as a result of a federal corruption investigation. *Id.* at ¶19. *See also* [Dkt. #52, Amended Compl., ¶¶17-18 and Dkt. #55 Answer] (Defendants admit that on March 17, White was arrested by the FBI and charged with corruption in public office and that on October 25, 2007, White pled guilty to theft of government property and conspiracy to commit bribery). After White's arrest, Maye states that the State's Attorney, who Maye does not claim was a party to the agreement, would not uphold Maye's agreement with White and would not acquiesce to Mays's withdraw his guilty plea to the 2006 false narcotics charges. [Dkt. #71, Maye Affidavit, ¶20]. Maye then failed to appear for his sentencing date for the "false narcotics charges in August 2007" and "picked up additional narcotics charges in 2008." *Id.* at ¶22.

On February 10, 2009, Maye's criminal defense attorney filed a motion to withdraw his guilty pleas to the 2006 narcotics charges because his plea was obtained as a result of pressure from and promises by White. *Id.* at ¶22; *see also* [Dkt. #71, Motion to withdraw guilty plea]. On February 11, 2009, a Superior Court judge, the Honorable Judge F. Blawie, granted Maye's motion to withdraw his guilty pleas at a hearing. [Dkt. #71, 2/11/2009 Hearing transcript]. Judge Blawie

concluded the Officer White's arrest for corruption infected the plea canvas and noted that "this Court has had to deal with the damage brought upon not only New Haven Police Department but upon the effective ability [of] the State to prosecute charges involving Lieutenant White. *Id.* at 25. Maye points out that Judge Blawie noted on the record at the hearing that "this Court…also had to *nolle* charges, also reduced sentenced, and in one case, that the Court's aware of, dismissed charged based upon misconduct by Lieutenant White and Detective Kasperzyk." *Id.* at 27. The State's Attorney informed the court that Maye's arrest did not involve any officers who had been arrested along with White on corruption charges. *Id.* at 15, 28. At the close of the hearing, the judge instructed that the State should assign Maye's cases to a prosecutor for trial and that "it should be fast tracked for trial given the age of the cases." *Id.* at 33-34.

Maye further attests in his affidavit that in "early 2010, the 2008 narcotics charges and the failure to appear and violation of probation charges from 2007 were scheduled for trial. Just before the trial began, the State's Attorney offered a plea deal for those charges of a total of 20 years suspended after 10 years to server and five years of probation." [Dkt. #71, Maye Affidavit, ¶26]. Maye declares that "I was told when I accepted the plea deal in 2010 that the 2006 charges were being dismissed or 'thrown out.'" I was not aware that those charges were not dismissed, if that is the case." *Id.* at ¶27. Maye further declares that "I was not told that, by accepting the plea deal in 2010, I would waive my right to sue the City of New Haven or the police officers involved in the 2006

incidents. If I had understood that the plea deal would waive my right to sue, I would not have accepted the plea." *Id.* at ¶28.

Maye states in his affidavit that the "State's decision to *nolle* or 'throw out' the false narcotics charges from 2006 was not part of an exchange for my agreement to plead to the 2008 narcotics charges and the 2007 failure to appear and violation of probation charges. The 2006 false narcotics charges were not on the trial calendar when the plea agreement was made." *Id.* at ¶29. He further states that "I refused to accept any proposals that would require me to plead to or serve time for the 2006 false narcotics charges because I was not in possession of narcotics in 2006. Any narcotics found were planted by police officers." *Id.* at ¶30.

Defendants have submitted the affidavit of the Assistant State Attorney, Lisa D'Angelo, who was assigned to prosecute the criminal cases against Maye. Attorney D'Angelo attests that the prosecution included eight separate criminal cases against Maye including the 2006 narcotics violations. [Dkt. #69, Ex. 4. D'Angelo Aff., ¶6]. D'Angelo further declares that all eight criminal cases "were resolved as part of a plea package in which Defendant Maye agreed to plead guilty to certain charges in exchange for the State's non-pursuit of certain other charges" and that the State's entry of a *nolle* prosequi in the cases based on Maye's arrest on May 15, 2006 and July 30, 2006 were part of the plea package and "not based on any police misconduct or lack of probable cause by arresting officers." *Id.* at ¶¶7-9.

On January 11, 2010, Maye appeared before the Honorable Earl B. Richards, III for a plea hearing in Superior Court. The Defendants have submitted a transcript of the plea hearing in support of their motions for summary judgment. [Dkt. #62, Ex. 3, Plea Hearing Transcript]. Attorney D'Angelo represented the State of Connecticut at the hearing and Attorney Michael Richards represented Maye at the hearing. At the hearing, Maye' counsel, Attorney Richards indicated to the court that "we worked out an agreement." *Id.* at 1. Attorney D'Angelo informed the Court that Maye had agreed to plead guilty to the 2008 narcotics charges, the failure to appear and the violation of probation charges. Attorney D'Angelo walked the court through the charges that Maye agreed to plead guilty by going through the associated docket numbers of the charges individually. *Id.* at 1-5. As the hearing drew to a close, the court asked Maye if he had anything he wanted to say. Maye then asked "I just want to know what's the situation with the '06 charges?" *Id.* at 10. Attorney Richards indicated that the failure to appear and the violation of parole charges were included in the plea. He then stated that the other charges "were thrown out, everything else was thrown out and you pled to the new stuff." *Id.* Attorney D'Angelo then stated that "there is no drug cases" to which Attorney Richards confirmed there was "[n]o drug cases." *Id.* Maye then asked "[s]o, '06 is done here?" *Id.* at 11. Attorney Richards answered that it was "[d]one. And everything is included – I mean, obviously." *Id.*

**Legal Standard**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Fed.R.Civ.P. 56(a). The moving party bears the burden of proving that no factual issues exist. *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir.2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.,* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir.2006) (internal quotation marks and citation omitted).

"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch–Rubin v. Sandals Corp.,* No.3:03cv481, 2004 WL 2472280, at *1 (D.Conn. Oct. 20, 2004) (internal quotation marks and citations omitted); *Martinez v. State of Connecticut*, No. 3:09cv1341 (VLB), 2011

WL 4396704 at *6 (D. Conn. Sept. 21, 2011). Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust and Clearance Co.*, 604 F.3d 712 (2d Cir. 2010).

Analysis

In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (citations omitted). "To prevail on a malicious prosecution claim under Connecticut law, a plaintiff must prove the following elements: (1) the defendant initiated or continued criminal proceedings against the plaintiff; (2) the criminal proceeding terminated in favor of the plaintiff; (3) 'the defendant acted without probable cause'; and (4) 'the defendant acted with malice.'" *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) (quoting *McHale v. W.B.S. Corp.*, 187 Conn. 444, 446 (1982)). Defendants argue that Maye cannot prove there was a favorable termination of the criminal charges brought against him to establish a malicious prosecution claim because the State entered *nolles* on the narcotics charges against Plaintiff from his arrests on May 15, 2006 and July 30, 2006 as part of a plea package.

A *nolle* prosequi is a "unilateral act by a prosecutor, which ends the pending proceedings without an acquittal and without placing the defendant in jeopardy." *Cislo v. City of Shelton,* 240 Conn. 590, 559 N.9 (1997) (internal quotations and citations omitted). "Under Connecticut law, a *nolle prosequi* terminates the prosecution, but the prosecuting authority is permitted to initiate a new action against the defendant within the statute of limitations. A *nolle prosequi* may not be entered if the accused objects and demands either a trial or dismissal. Criminal charges that have been *nolled* are erased thirteen months after entry of the *nolle prosequi.*" *Roberts*, 582 F.3d at 420 (citing Conn. Practice Book § 39-31; Conn. Gen.Stat. § 54-56b; Conn. Gen. Stat. § 54-142a(c)).

"Connecticut law adopts a liberal understanding of a favorable termination for the purposes of a malicious prosecution claim." *Id.* at 420-21. "It is not necessary that the accused should have been acquitted. It is sufficient if he was discharged without a trial under circumstances amounting to an abandonment of the prosecution...." *See v. Gosselin,* 133 Conn. 158, 160 (1946). The Second Circuit has noted that the "United States District Court for the District of Connecticut has reached different conclusions on whether a *nolle prosequi* bars a claim of false arrest or malicious prosecution. What these cases have in common however is that they were adjudicated at summary judgment, and the outcome depended on whether facts material to the reasons for the *nolle prosequi* remained in dispute." *Roberts*, 582 F.3d at 421 (collecting cases). "The majority of cases from Connecticut courts interpret Connecticut law so that a *nolle prosequi* satisfies the "favorable termination" element as long as the

abandonment of the prosecution was not based on an arrangement with the defendant." *Id.* Consequently, a "'*nolle* will preclude a subsequent case for malicious prosecution when it was made as part of a plea bargain....'" *Id.* (quoting *Holman v. Cascio,* 390 F.Supp.2d 120, 123-24 (D.Conn.2005)).

Defendants argue that the State's Attorney's affidavit and the plea hearing transcript indicating that the *nolles* were entered as part of a plea package demonstrate that the criminal proceedings on the 2006 narcotics charges did not terminate in Maye's favor. Maye primarily relies on his own affidavit which reflects his understanding of the 2010 plea package to create a genuine dispute of material fact as to favorable termination. Maye states in his affidavit that it was his understanding that the 2006 charges were just thrown out and were not part of an exchange for his agreement to plead to those other charges. However, Maye's understanding of the plea package is belied by the plea hearing transcript in which Maye's own attorney states on the record that the *nolle* of the 2006 narcotics charges was part of the plea agreement. At the hearing in response to Maye's question about the status of the 2006 narcotics charges, Maye's counsel, Attorney Richards stated that everything "is included." Attorney Richards further explained to Maye at the plea hearing that the 2006 charges "were thrown out" and "you pled to the new stuff." [Dkt. #62, Ex. 3, Plea Hearing Transcript, p.11]. In view of the plea hearing transcript, no reasonable trier of fact could conclude that the State's abandonment of the prosecution of the 2006 narcotics charges was not based on an arrangement with Maye. The Court's conclusion would have been different had Maye presented evidence that the Superior Court

dismissed the charges for reasons related to Officer White's misconduct; however, no such linkage exists. Instead, the transcript reflects a standard plea bargain in which a defendant and a prosecutor agree to a penalty sufficient to redress all the pending charges and the defendant pleads to the charge or charges which yield the amount of punishment which the defendant agrees to serve and the prosecutor agrees to recommend to the court.

Maye further attempts to bolster his assertion that the *nolles* of the 2006 charges were a complete abandonment of the prosecution without request by or arrangement with him based on the fact that Judge Blawie granted his motion to withdraw his guilty pleas and Judge Blawie's comments that in other cases where White was involved the State's Attorney had to abandon the prosecution of criminal charges and reduce sentences. However the fact that the State's Attorney may have abandoned the prosecution of other criminal charges in totally unrelated criminal cases against different criminal defendants cannot demonstrate that the State's Attorney also similarly abandoned the prosecution of Maye's 2006 charges. What the State's Attorney did or did not do in totally unrelated cases cannot create a genuine dispute of material fact as to whether the *nolles* of Maye's 2006 charges were a part of the plea package. In addition, there is no evidence that the State's Attorney abandoned the prosecution of the 2006 charges after the motion to withdraw Maye's guilty pleas was granted. After Judge Blawie granted Maye's motion, he instructed the State to assign a prosecutor to try Maye's cases on the 2006 narcotics charges and suggested that trial be fast tracked given the age of the cases. No reasonable juror could

conclude that the State abandoned its prosecution as a result of Judge Blawie granting Maye's motion to withdraw his guilty pleas or his comments about other criminal cases involving White. Quite the contrary, the only recompense afforded Maye for having been arrested and induced to plead guilty by White was allowing Maye to withdraw his guilty plea and agreeing to expedite the scheduling of his his trial.

Maye also points out that the State's Attorney changed its position in plea negotiations after Judge Blawie's decision to be more favorable to Maye. Maye argues that the State's Attorney "did not interpret the *nolle* of the 2006 narcotics charges as a thing of value, to be traded with Plaintiff for other guilty pleas." [Dkt. #72, p. 14]. However, the fact that the State's Attorney continued to conduct plea negotiations with Maye bolsters and not defeats the conclusion that the *nolles* of the 2006 charges were part of the plea package. Moreover, Maye's speculation as to how the State's Attorney might have valued the 2006 charges is speculative and unsupported by any evidence and is thus insufficient to create a genuine dispute of material fact as to whether the 2006 charges were included in the plea package to defeat summary judgment. *See Scotto v. Alemas*, 143 F.3d 105, 114 (2d Cir. 1998) (At the summary judgment stage,"[t]he non-moving party may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Alemas*, 143 F.3d 105, 114 (2d Cir. 1998).

Lastly, Maye argues that the plea hearing transcript does not demonstrate that the 2006 charges were included in the plea package because the State's Attorney did not mention those charges during the course of the hearing and

those charges were only mentioned in response to Maye's question. However, the fact that the State's Attorney did not initially mention those charges is not dispositive as to whether the State's entry of a *nolle* on those charges reflected an abandonment of the prosecution without request by or arrangement with Maye. When Maye did raise the issue of those charges at the hearing, Maye's own attorney clearly indicated that the withdrawal of those charges were included as part of the plea package which was confirmed by the State's Attorney. Even viewing the facts in the light most favorable to the Plaintiff, no reasonable trier of fact could conclude that the 2006 narcotics charges were terminated favorably and therefore Maye has failed to create a genuine dispute of material fact. In addition, the prosecutor's recitation of the charges included only those charges to which Maye was pleading guilty. Only after the guilty plea is entered does the prosecutor normally move for a dismissal or *nolle* of the remaining charges. Because the evidence demonstrates that the *nolles* were entered as part of a plea agreement, the *nolle* precludes Maye's subsequent case for malicious prosecution.

The Court notes that Maye appears to suggest in his affidavit that he received ineffective assistance of counsel in connection with the 2010 plea agreement. Maye states in his affidavit that "I was not told that, by accepting the plea deal in 2010, I would waive my right to sue the City of New Haven or the police officers involved in the 2006 incidents. If I had understood that the plea deal would waive my right to sue, I would not have accepted the plea." [Dkt. #71, Maye Affidavit, ¶28]. However, Maye did not waive his right to sue the City of New

Haven or those police officers when he accepted the plea deal in 2010. Indeed, Maye could and did sue the City of New Haven and several police officers. Because favorable termination is an essential element of a malicious prosecution claim, only his claim for malicious prosecution is precluded by the plea agreement. Other claims, such as claims for excessive force, which do not require favorable termination would not be precluded by the plea agreement. Moreover, Maye's criminal defense attorney had no obligation to inform Maye of the possible impact of accepting the plea deal on any potential civil claims Maye could bring against the police. See *McDonald v. Hardy*, 359 F. App'x 650, 655 (7th Cir. 2010) ("The federal courts of appeal frequently have concluded that an attorney who fails to inform his client of direct consequences of a conviction is ineffective but that an attorney need not mention collateral consequences.") (collecting cases); *Bauder v. Dept. of Corrections of Fla.*, 33 F. App'x 422, 424 (11th Cir. 2009) ("counsel is not constitutionally ineffective for failing to inform a defendant of collateral consequences of a guilty plea"); *U.S. v. U.S. Currency in the Amount of $28,536.00*, 895 F.2d 908, 915 (2d Cir. 1990) ("Certain possible consequences of a guilty plea are "collateral" rather than direct and need not be explained to the defendant in order to ensure that the plea is voluntary.").

## Conclusion

For the aforementioned reasons, the Court GRANTS Defendants' [Dkt. ##69-70] motions for summary judgment. The Clerk is directed to enter judgment in favor of Defendants and close the file.

IT IS SO ORDERED.

_____/s/_____
**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: January 16, 2013**